FILED

2023 Apr-04  AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
HUNTSVILLE DIVISION

| | | |
|---|---|---|
| GARY MATLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NUMBER: |
| | ) | |
| ERIC PURYEAR, in his individual | ) | |
| capacity; RYAN GREEN, in his | ) | |
| individual capacity; JAMES | ) | |
| BERRYMAN, in his individual capacity; | ) | |
| JOHNATHAN TERRY, in his individual | ) | |
| capacity; DAN COLLINS, in his | ) | |
| individual capacity; AND DESHANNON | ) | |
| BOWLING, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.     Comes now the plaintiff, Gary Matlock, who brings this action for monetary relief, instituted to secure the protection of rights secured through 42 U.S.C. §1983 that provides relief for the deprivation of those rights, privileges, or immunities secured by the Constitution and laws of the United States.

## I.     INTRODUCTION

2.     Law enforcement is legally required to use a level of force that is proportional to the level of threat they are facing and intervene to protect a citizen/suspect's constitutional rights when officers exceed that proportionality. This case involves the excessive use of force against 60-year-old, Gary Matlock ("Matlock"), an unarmed, non-threatening citizen of Colbert County who on

December 16, 2022, called E911 seeking assistance concerning a trespasser. Colbert County law enforcement officers were dispatched in response.

3.      Law enforcement arrived at Matlock's home somewhere before or shortly after midnight. At least one deputy, Eric Puryear, cursed Matlock; inexplicably broke the driver side car window where Matlock was seated; beat, and handcuffed him; then brutally stomped him breaking his leg/hip; illegally searched Matlock's car; removed the handcuffs; and then left the property without investigating Matlock's E911.

4.      Here, the facts show a) the amount of force Eric Puryear used was not necessary or objectively reasonable given the circumstances, b) one or more law enforcement officers failed to intervene to protect Matlock's constitutional rights from infringement by Eric Puryear, and c) one or more of Eric Puryear's supervisors failed to adequately train him and the others present.

5.      Based on the following facts and causes of action, Plaintiff respectfully asks this Court to hold Defendants Eric Puryear, Ryan Green, James "Calvin Berryman, Johnathan Terry, Dan Coggins, and DeShannon Bowling, accountable for their actions or inaction, and provide just compensation to Plaintiff Matlock.

## II.    <u>JURISDICTION AND VENUE</u>

6.      The authority of this Court is invoked for Counts I - V pursuant to 28 U.S.C. § 1331, because each is brought pursuant to 42 U.S.C. §§ 1983 and 1988,

and each alleges violations of the United States Constitution. The supplemental authority of this Court is invoked under 28 U.S.C. § 1367(a) for Counts VI - VII asserting pendent state law claims.

7.     Venue is proper in this division and district under 12 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this division and district. Venue is proper in this division and district under 28 U.S.C. § 1391(b)(1) and (c)(2) because the defendants reside in this division and district as defined.

### III.   **PARTIES**

8.     The plaintiff, Gary Matlock, a 60-year-old white male, is a resident and citizen of Colbert County, Alabama.

9.     The defendant, Eric Puryear, a 24-year-old white male, is a resident and citizen of Colbert County, Alabama. Defendant issued only in his individual capacity, not in his official capacity.

10.     The defendant, Ryan Green, a 28-year-old white male, is a resident and citizen of Colbert County, Alabama. Defendant is sued only in his individual capacity, not in his official capacity.

11.     The defendant, James "Calvin" Berryman, a 25-year-old white male, is a resident and citizen of Colbert County, Alabama. Defendant is sued only in his individual capacity, not in his official capacity.

12.     The defendant, Johnathan Terry, a 48-year-old white male, is a resident and citizen of Colbert County, Alabama. Defendant is sued only in his individual capacity, not in his official capacity.

13.     The defendant, Dan Coggins, a 50-year-old white male, is a resident and citizen of Colbert County, Alabama. Defendant is sued only in his individual capacity, not in his official capacity.

14.     The defendant, DeShannon Bowling, a 50-year-old white male, is a resident and citizen of Colbert County, Alabama. Defendant is sued only in his individual capacity, not in his official capacity.

### IV.     **STATEMENT OF FACTS**

15.     On the night of February 22nd or 23rd, 2022, a group of at least four law enforcement officers responded to a report of a suspicious male on County Line Road, they found Robert Dowdy Hand ("R. Hand") at the scene and started his arrest.

16.     Before, during, and after the arrest, Colbert County Deputy Sheriff Eric Puryear ("Puryear") and a Colbert County Reserve Deputy Sheriff/Colbert County used excessive force against R. Hand.

17.     Puryear and the reserve deputy appeared to enjoy the encounter, egging each other on and trying to outdo each other's physicality.

18.     Although Colbert County Reserve Deputy Sheriff James "Calvin" Berryman ("Berryman") observed their use of excessive force, he failed to intervene

4

to stop them despite his ability to do so.

19.     Sergeant Dan Collins allegedly arrived on the scene after the brutal beating and immediately requested emergency medical care.

20.     An ambulance took R. Hand to Helen Keller Hospital where he was treated for his injuries and then transported to the Colbert County Jail for booking. *See* Booking Photograph,



21.     After the incident, Puryear's superiors watched body-cam video and inquired as to why he beat R. Hand so severely. Puryear responded that he was trained to engage in such behavior while employed by the Sheffield Police Department, and that Sheffield police officers routinely respond in a similar fashion. Puryear expressed no remorse for his conduct.

22.     The Sheriff's Office then requested that the Alabama Law Enforcement Agency ("ALEA") conduct an inquiry into Puryear's conduct.

23.     While awaiting the results of the investigation, Puryear was assigned to security at the county courthouse.

24.     Puryear's and the reserve deputy sheriff's use of excessive force and their reasons for doing so did not go unnoticed by their superiors, including Corporal Ryan Green ("Green"), Sergeant Dan Coggins ("Coggins"), Sergeant Johnathan Terry ("Terry"), and Lieutenant Deputy DeShannon Bowling ("Bowling").

25.     These officers either participated in the investigation into what transpired that night and why or learned about it through their chain of command and colleagues.

26.     The Sheriff's Office placed the insurance carrier on notice that a lawsuit may arise from the R. Hand incident. To avoid having to admit liability, and without regard for the public's safety, the insurance carrier directed Puryear's superiors not to terminate his employment and to place him back on patrol.

27.     Consequently, Puryear resumed his duties as a patrol officer in Colbert County.

28.     Still, armed with the knowledge of what had occurred February 22nd or 23rd, Green, Coggins, Terry, and Bowling failed thereafter to organize and adequately train their subordinates as to the use of de-escalation techniques, when the use of force is appropriate, what amount of force is appropriate, their affirmative duty to intervene and stop a member of law enforcement's use of excessive force, how to do so, and that the Colbert County Sheriff's Office does not tolerate the use

of excessive force by its officers or an officer's failure to intervene to stop another deputy's use of excessive force.

29.    Puryear and Berryman, were two of the subordinates never adequately trained or re-trained by those superior officers.

30.    December 16, 2022, Plaintiff Gary Matlock ("Matlock") drove and picked up his girlfriend from work. At approximately 11:00 p.m., they arrived at their residence on Nichols Lane in or around the city of Leighton, in Colbert County, Alabama.

31.    Once home, Matlock heard a suspicious noise and the dogs barking.

32.    Matlock knew thefts had occurred in the area, so he went to check on the commotion.

33.    Matlock thought he saw a stranger on the property.

34.    Matlock called E911, explained what he had observed, and requested the dispatch of an officer to investigate. He waited in his vehicle in the driveway for law enforcement to arrive.

35.    Several law enforcement vehicles eventually turned into Matlock's driveway and stopped.

36.    The vehicles did not have on emergency lights or sirens and Matlock remained in his car smoking a cigarette because the temperature was in the forties and the wind was blowing. He waited for the officers to come talk.

37.    At least three (3) law enforcement officers exited the vehicles and gathered near Matlock's car, including but not limited to: Defendant Puryear, Defendant Berryman, and Defendant Green.

38.    Puryear came to the window of Matlock's vehicle, and he rolled it down partially to talk. Puryear asked Matlock for his identification.

39.    Matlock responded in a friendly manner, he passed his identification to Puryear, and he tried to tell Puryear where to look for the potential trespasser.

40.    Puryear took the identification card from Matlock, and he inexplicably threw it on the ground in the presence of Berryman and Green.

41.    Puryear started yelling at Matlock, telling him to exit his vehicle. In response the 60-year-old Matlock calmly tried to explain it was difficult for him to stand due to a flare-up of his gout, and that he was the one who had called E911 and requested their assistance.

42.    Hearing the uproar, Matlock's girlfriend came outside, and she too told the deputies that Matlock resided at the home, and that he had called E911 concerning a possible trespasser/thief on the property.

43.    Puryear did not relent. Frightened, Matlock asked Puryear to "hold on," and he called E911 and started to report Puryear's conduct and seek its assistance in dealing with him.

44.    Hearing Matlock on the phone talking with E911 and lodging a

complaint, Puryear cursed Matlock and shattered his partially raised driver-side window with his baton, Puryear aggressively pulled Matlock out of the car, pulled Matlock's leather jacket over his arms so he could not move them to catch his fall or otherwise, and then Puryear threw him to the ground.

45.    Matlock did not physically resist Puryear, nor did he attempt to flee.

46.    Defendants Green and Berryman witnessed Puryear's escalation in hostility and use of force against Matlock, they were able to intervene to stop it, but failed to do so.

47.    Next, Green and Berryman witnessed Puryear's beating of Matlock unnecessarily while securing the handcuffs. They were able to intervene to stop Puryear but failed to do so.

48.    Still present, Green and Berryman could have intervened before Puryear started next to stomp on Matlock but again they failed to do so.

49.    Consequently, Matlock felt and heard bone(s) break while Puryear viscously stomped him. The others heard it too, and together they yanked Matlock off the ground and leaned him against his vehicle with his leg dangling, unable to support any weight.

50.    At no time before or during the encounter did Puryear or any other member of law enforcement suspect, believe, or have reason to believe Matlock was connected to criminal activity or that he had committed a misdemeanor, felony or

otherwise.

51.    At no time before or during the encounter did Matlock physically threaten law enforcement or others with bodily injury, resist arrest, nor did he try to escape.

52.    At no time before or during the encounter did law enforcement advise Matlock he was under arrest.

53.    In fact, law enforcement never arrested Matlock that night, nor has the Colbert County Sheriff's Office issued a warrant for his arrest.

54.    In need of a reason for his treatment of Matlock, while Matlock was handcuffed, Puryear and the others engaged in an unauthorized, warrantless search of Plaintiff's vehicle looking for illegal paraphernalia but found nothing illegal.

55.    No member of law enforcement present that night intervened to stop the illegal search of Matlock's car nor did anyone intervene to stop the illegal detention of Matlock in handcuffs.

56.    Defendant Terry arrived on the scene, observed Matlock's condition, and he immediately called emergency services.

57.    Emergency services pulled on the property and one of the deputies finally took the handcuffs off Matlock and asked if he wanted to ride with a deputy in the ambulance to the hospital.

58.    After what had occurred, scared, Matlock declined to go in the

ambulance with any of the law enforcement personnel.

59.    Emergency services and law enforcement left the property leaving Matlock beside his vehicle unable to walk, bleeding, and seriously injured.

60.    No law enforcement present that night, including Terry, filed the requisite reports after the incident that would memorialize what had occurred, nor did they verbally report what had happened to their superiors.

61.    Afraid to leave the property and encounter the deputies again, Matlock attempted to recover from his beating without medical treatment, but his condition worsened.

62.    Less than 48 hours later, on Sunday, December 18, 2022, Matlock called an ambulance, and it took him to the emergency room at Helen Keller Hospital.

63.    Matlock suffered lacerations and a displaced fracture of the base neck femur. When asked what happened Matlock told the hospital that he was beaten by police. *See* also, Medical Record Excerpt,

```
DATE OF CONSULTATION:  12/19/2022

REASON FOR CONSULTATION:  Left hip fracture.

HISTORY OF PRESENT ILLNESS:  Mr. Matlock is a 60-year-old, Caucasian male with no
current primary care provider, and a past medical history significant for
hypertension, which he takes no medication at this time.  He arrived to the facility
at Helen Keller Hospital via emergency medical service with left hip and left leg
pain, and was found to have an acute left femoral neck fracture by x-ray.  It is
noted that his story became somewhat unclear, and he became hostile and suspicious
when asked questions.  He stated that the Culver County Police came to his house
Friday night, and stomped on him and beat him up.
```

64.    A doctor admitted Matlock to the hospital for medical treatment and hip surgery due to the fracture.

65.     The surgery was performed Tuesday, December 20, 2022, and the hospital discharged Matlock the next day.

66.     Matlock was rendered unable to work due to the injury and his physical limitations resulting from the surgery.

67.     On or about January 19, 2023, Colbert County's newly elected sheriff, Eric Ballentine, received notice of Matlock's complaints herein via a preservation letter sent by the undersigned.

68.     In response, Sheriff Ballentine launched an internal investigation.

69.     According to Sheriff Ballentine,

"We viewed all the body cam footage. It was not favorable for this deputy (Puryear). It was clear to us that he had violated 7 departmental policies and we had to take action as soon as possible."

70.     Within a week, Sheriff Ballentine fired Puryear.

71.     March 9, 2023, a Colbert County grand jury indicted Puryear on a charge of assault for his use of excessive force against R. Hand back in February 2022.

72.     According to Sheriff Ballentine, ALEA and the FBI are investigating Puryear's use of force against Matlock.

V.     **CAUSES OF ACTION**

**FEDERAL CLAIMS**

A.     **COUNT I: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (USE OF EXCESSIVE FORCE)**

73.     This cause of action, Count I, is brought against Defendant Puryear in his individual capacity through 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth Amendment of the United States Constitution.

74.     Section 1983 provides a cause of action for plaintiffs who have suffered "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

75.     On the 16th or 17th of December 2022, Puryear was working as an on-duty Colbert County deputy sheriff when he engaged Matlock while acting under the color of law within the meaning of 42 U.S.C. §1983.

76.     Like all graduates of academies approved by the Alabama Peace Officers Standard and Training Commission ("APOSTC"), the basic training Defendant Puryear received at the Alabama Criminal Justice Training Center in Selma, Alabama, covered these legal issues:

   a.  Constitutional foundations.

   b.  Detention, arrest, use of force, search, and seizure law.

      1) The interpretation and applicability of these terms, statutes, and case decisions:

     i. Color of Law
     ii. 18 U.S.C. §§ 241-242
     iii. U.S. Constitution, Amendments IV, XIV-XV
     iv. *Terry v. Ohio,* 392 U.S. 1 (1968)
     v. *Tennessee v. Garner,* 471 U.S. 1 (1984)
     vi. *Graham v. Conner*, 490 U.S. 386 (1989)

  c. Civil and criminal liability law.

   1) The interpretation and applicability of this statute:

     i. 42 U.S.C. §§1983 and 1985

77. To graduate, Defendant Puryear had to score a 70% or higher on his legal issues exam.

78. Defendant Puryear graduated in April of 2021.

79. Defendant Puryear knew or should have known his conduct and use of force against Matlock on the 16th or 17th of December 2022, violated Matlock's well established Fourth Amendment right to be free from unreasonable searches and seizures, which includes the right to be free from the use of excessive force. *See also,* ¶¶ 21-23, 26-27, 69.

80. It is settled law that the use of any force violates clearly established law when officers do not suspect that the individual committed a serious crime and he or she did not pose an immediate threat of harm and or resist arrest.

81. It is well settled law that law enforcement officers cannot use force that is unnecessary to any legitimate law enforcement purpose.

82. Defendant Puryear did not suspect that Matlock was somehow

14

connected with criminal activity or had committed a crime, that he was dangerous to himself or others, resisting arrest, or attempting to escape. *See also* ¶¶ 45, 50-53, 60.

83.     Defendant Puryear did not have probable cause to arrest Matlock. *See* ¶¶ 45, 50-53, 60.

84.     Defendant Puryear's breaking of Matlock's car window, his throwing of Matlock to the ground, handcuffing of Matlock, rough handling of Matlock, and beating of Matlock constitute the use of excessive force. *See also* ¶¶ 30-53.

85.     Based on the preceding, ¶¶ 82-84, Puryear's use of force was not necessary or objectively reasonable.

86.     Puryear's use of force was not necessary or objectively reasonable as evidenced by the fact that his conduct violated at least seven departmental policies. *See* ¶ 69.

87.     One or more law enforcement cameras captured video that supports Plaintiff's description of events herein and this claim.

88.     Puryear's use of excessive force violated Matlock's constitutional rights and caused him to suffer property damage; physical injury; past and ongoing pain, and suffering; more than $30,000.00 in medical bills; past and ongoing emotional distress; lost income; and disability.

89.     Based on the preceding, ¶¶ 75-87, reasonable jurors could conclude

that given the circumstances, the amount of force Puryear used was not necessary, proportional, or objectively reasonable; Puryear knew or reasonably should of have known that the force he used violated Matlock's federally protected constitutional rights; Puryear was plainly incompetent; or Puryear's actions were done with a reckless indifference and a callous disregard for Matlock's constitutional rights and well-being.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear in his individual capacity; (2) award Plaintiff compensatory damages arising out of the defendant's use of excessive force consistent with federal common law remedies, including but not limited to, Special Damages for lost wages and benefits, and General Damages sufficient to compensate Plaintiff for lost future earning capacity and to vindicate his valuable intangible constitutional rights violated by Defendant; (3) punitive damages, (4) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (5) award Plaintiff all other relief deemed proper by the Court.

### B.   COUNT II: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (UNLAWFUL SEIZURE)

90.     This cause of action, Count II, is brought against Defendants Puryear, Green and Berryman, in their individual capacities, through 42 U.S.C. §§ 1983 and 1988, for violations of the Fourth Amendment of the United States Constitution.

91.     On the 16th or 17th of December 2022, when responding to Matlock's

E911 call, Puryear, Green and Berryman were working as on-duty Colbert County law enforcement while acting under the color of law within the meaning of 42 U.S.C. §1983.

92.     Before the 16th or 17th of December 2022, like Puryear, Defendant's Green and Berryman received training on the legal issues outlined *supra* in Paragraph 76.

93.     Defendants knew or should have known their handcuffing and custody of Matlock violated his well-established Fourth Amendment right to be free from unreasonable seizures.

94.     Matlock was at home on private property, sitting in his car waiting on law enforcement to arrive with the engine off, simply trying to stay warm and to alleviate his pain while standing. *See* also, ¶¶ 30-41.

95.     Matlock's girlfriend advised the law enforcement officers present before Puryear's use of excessive force that Matlock lived at the residence, and that he had called E911 due to a suspected trespasser.

96.     Still, Defendant Puryear handcuffed Matlock without reasonable suspicion or probable cause to believe there was a chance he was linked to criminal activity or engaged in criminal activity. *See* also, ¶¶ 45. 50-53-60. Neither Green, Berryman, nor Puryear subsequently released Matlock until directed to do so after emergency medical services arrived. *See* also, ¶¶ 56-57.

97.    As such, the three defendants illegally restrained and seized Matlock for an unjustifiable lengthy period, between 30 and 60+ minutes. In the alternative, if only Puryear illegally seized Matlock, as alleged *infra* at Count IV, Green and Berryman failed to intervene to stop Puryear's infringement on Matlock's constitutional right to be free from unreasonable seizure.

98.    That night, Colbert County law enforcement never arrested Matlock.

99.    One or more law enforcement cameras captured video that supports Plaintiff's description of events herein and this claim.

100.   The handcuffing of Matlock, and  Defendant's subsequent custody of Matlock, constituted an unreasonable seizure in violation of Matlock's Fourth Amendment rights. *See* also, ¶ 69.

101.   As a result of Defendants' unlawful seizure of Matlock, Matlock suffered violations of his constitutional rights; he experienced pain and suffering; and past and ongoing emotional distress.

102.   Based on the preceding, ¶¶ 91-100, reasonable jurors could conclude that given the circumstances, Puryear, Green, and Berryman knew or reasonably should of have known that their restraint and custody of Matlock for such an unreasonable amount of time violated Matlock's federally protected constitutional right to be free from unlawful seizure; they were plainly incompetent; or their actions or inactions were perpetrated a reckless indifference and a callous disregard

for Matlock's constitutional rights.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear, Green, and Berryman; (2) award compensatory damages arising out of the defendants' unlawful seizure of Plaintiff consistent with federal common law remedies, including General Damages sufficient to vindicate his valuable intangible constitutional rights violated by Defendant; (3) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (4) award Plaintiff all other relief deemed proper by the Court.

### C.    COUNT III: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (UNLAWFUL SEARCH)

103.    This cause of action, Count III, is brought against Defendant Puryear, Green, and Berryman in their individual capacities through 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth Amendment of the United States Constitution.

104.    Section 1983 provides a cause of action for plaintiffs who have suffered "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

105.    On the 16th or 17th of December 2022, when responding to Matlock's E911 call, Puryear, Green and Berryman were working as on-duty Colbert County law enforcement while acting under the color of law within the meaning of 42 U.S.C. §1983.

106.    Before the 16th or 17th of December 2022, like Puryear, Defendant's

Green and Berryman received training on the legal issues outlined in Paragraph 76, *supra*.

107.   Defendants unlawfully searched Matlock's car without consent, a warrant or reasonable suspicion or probable cause to believe a) Matlock was connected to criminal activity or that he had committed a crime, or b) Matlock was dangerous to himself or that he was dangerous to law enforcement or others. *See also*, ¶¶ 45, 50-53, 60. In the alternative, if only Puryear illegally searched Matlock's car, as alleged *infra* at Count IV, Green and Berryman failed to intervene to stop Puryear's infringement on Matlock's constitutional right to be free from unreasonable searches.

108.   Defendants knew or should have known their search of Matlock's car violated Matlock's well-established Fourth Amendment right to be free from unreasonable searches.

109.   One or more cameras captured video that supports Plaintiff's description of events herein and this claim.

110.   Based on the preceding, ¶¶ 105-109, reasonable jurors could conclude that given the circumstances, Puryear, Green, and Berryman knew or reasonably should of have known that their search of Matlock's vehicle was unreasonable and violated his federally protected constitutional right to be free from unlawful searches; Defendants were plainly incompetent; or their actions or inactions were

perpetrated a reckless indifference and a callous disregard for Matlock's constitutional rights.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Puryear, Green, and Berryman; (2) award compensatory damages arising out of the defendants' unlawful search of Plaintiff's car consistent with federal common law remedies, including General Damages sufficient to vindicate his valuable intangible constitutional rights violated by Defendant; (3) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (4) award Plaintiff all other relief deemed proper by the Court.

### D.   COUNT IV: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. §1983 (FAILURE TO INTERVENE TO PROTECT CONSTITUTIONAL RIGHTS)

111.   This cause of action, Count IV, is brought against Defendants Green and Berryman in their individual capacities through 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth Amendment of the United States Constitution.

112.   If a member of law enforcement, whether supervisory or not, fails or refuses to intervene when a constitutional violation takes place in his presence, that officer is personally liable.

113.   Plaintiff incorporates by reference as if fully stated herein Paragraphs 75-87, 91-100, 105-109, *supra*.

114.   On the 16th or 17th of December 2022, when Puryear engaged Matlock

in their presence, Defendants Green and Berryman were working as law enforcement for the Colbert County Sheriff while acting under color of law within the meaning of 42 U.S.C. §1983.

115.   Green and Berryman knew of Puryear's propensity to use excessive force. *See* ¶¶ 15-26.

116.   Defendants Green and Berryman knew or should have known Puryear's use of excessive force against Matlock, his seizure of Matlock, and his search of Matlock's car violated Matlock's constitutional rights.

117.   Defendants Green and Berryman knew or should have known of their affirmative duty to intervene to protect Matlock's constitutional rights.

118.   Defendants Green and Berryman saw or heard a) Puryear become hostile without justification, b) Puryear break the window of Matlock's car, c) Puryear's yelling and cursing at Matlock, d) the force Puryear used to remove Matlock from the car, e) the force Puryear used to handcuff Matlock, f) the force Puryear used against Matlock after handcuffing him, g) Puryear's search of Matlock's car, and h) Puryear's unreasonable seizure of Matlock.  Before each of the forgoing occurred, Green and or Berryman were able to intervene to stop the infringement of Matlock's constitutional rights by Puryear, yet they failed to do so.

119.   Defendants Green and Berryman were plainly incompetent when failing to intervene, or in the alternative, their failure to intervene demonstrates a

conscious disregard for Matlock's constitutional rights and well-being.

120.   As a result of Defendants' failure to intervene, Matlock suffered violations of his constitutional rights; he suffered physical injury; past and ongoing pain, and suffering; more than $30,000.00 in medical bills; past and ongoing emotional distress; lost income; and disability.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Green and Berryman in their individual capacities; (2) award Plaintiff compensatory damages arising out of the defendants' failure to intervene consistent with federal common law remedies, including but not limited to, Special Damages for lost wages and benefits, and General Damages sufficient to compensate Plaintiff for lost future earning capacity and to vindicate his valuable intangible constitutional rights violated by Defendant; (3) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (4) award Plaintiff all other relief deemed proper by the Court.

### E.   COUNT V: VIOLATIONS OF U.S. CONST., AMEND. IV, THROUGH 42 U.S.C. § 1983 (FAILURE TO TRAIN)

121.   This cause of action, Count V, is brought against Defendants Green, Coggins, Terry, and Bowling through 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth Amendment of the United States Constitution.

122.   Section 1983 provides a cause of action for plaintiffs who have suffered "the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws.

123.   Under Section 1983, administrators and supervisors are liable for their failure to provide adequate training to subordinates if the need for training is obvious, the inadequacy is likely to result in the violation of constitutional rights, and the subordinate will be required to conduct the function for which training was not adequate.

124.   At all relevant times before the 16th or 17th of December 2022, Green, Coggins, Terry, and Bowling were working as on-duty Colbert County law enforcement while acting under the color of law within the meaning of 42 U.S.C. §1983.

125.   Since Sheriff Williamson's first term in office, the Colbert County Sheriff's Office has had in place a structure of distinct levels of management and a rank structure, responsible for communication up and down the chain of command, and the supervision and training of their subordinates.

126.   In December of 2022, the Colbert County Sheriff's Office identified Defendants Bowling, Coggins, and Terry as Administrative Deputies.

127.   Deputies and reserve deputies, like Puryear and Berryman respectively, report directly to corporals, including Defendant Green, and indirectly to all higher ranks or levels of administration.

128.   Corporals report directly to sergeants, like Defendants Coggins and

Terry, and indirectly to all higher ranks or levels of administration.

129.   Sergeants report directly to the lieutenant deputy, here Defendant Bowling, and indirectly to all higher ranks or levels of administration.

130.   All law enforcement in the State of Alabama must graduate from an academy approved by the Alabama Peace Officers Standards & Training Commission ("APOTSC") or demonstrate equivalent training and or experience.

131.   According to APOSTC, that approved training is "basic training" on how to become a law enforcement officer, and graduates need additional in-service training; a dedicated class on de-escalation is not part of the APOSTC curriculum.

132.   To maintain certification, APOTSC requires at least 12-hours of in-service training annually, but the Vice Chairman of APOSTC recommends that officers have 40-120 hours of training available annually. Shelby County sheriff deputies average at least 40 hours of in-service training per year, and each year deputies retrain on de-escalation.

133.   Defendants Bowling, Coggins, Terry, and Green learned through their chain of command and colleagues or directly as part of an investigation into Puryear's conduct in February 2022, that Puryear had a history of using excessive force while working with Colbert County and the Sheffield Police Department.

134.   Defendants Bowling, Coggins, Terry, and Green learned through their chain of command and colleagues or directly as part of an investigation into

Puryear's conduct in February 2022, that reserve deputies, including Berryman, would not intervene to stop Puryear from infringing on citizens constitutional rights while in their presence.

135.   After the February 2022 incident involving R. Hand, Defendants Bowling, Coggins, Terry, and Green had actual or constructive notice that the training received by Puryear and Berryman was deficient, *i.e.*, non-existent, ineffective, or inadequate to prevent Puryear's use of excessive force, and or ensure Berryman intervened to stop Puryear's use of excessive force.

136.   The need for additional training in those areas was obvious, and Defendants Bowling, Coggins, Terry, and Green knew or should have known with certainty that in the future Puryear would have to exercise restraint or good judgment in his use of force, and that Berryman would have to evaluate his colleagues' use of force to determine its necessity and proportionality and whether he must intervene to stop a constitutional violation.

137.   As such, with deliberate indifference, Defendants chose not to train or adequately train Puryear and Berryman in those areas.

138.   As a result of Defendants' failure to adequately train Puryear and Berryman, Matlock suffered violations of his constitutional rights; he suffered physical injury; past and ongoing pain, and suffering; more than $30,000.00 in medical bills; past and ongoing emotional distress; lost income; and disability.

26

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Bowling, Coggins, Terry, and Green, in their individual capacities; (2) award Plaintiff compensatory damages arising out of the defendant's use of excessive force consistent with federal common law remedies, including but not limited to, Special Damages for lost wages and benefits, and General Damages sufficient to compensate Plaintiff for lost future earning capacity and to vindicate his valuable intangible constitutional rights violated by Defendant; (3) punitive damages, (4) award Plaintiff attorney's fees, expert witness fees, court costs, and interest as allowed by law; and (5) award Plaintiff all other relief deemed proper by the Court.

## STATE CLAIMS

### F.    COUNT VI: ASSAULT AND BATTERY (AGAINST PURYEAR)

139.    In the alternative, Puryear's use of excessive force against Matlock was willful, not negligent or wanton.

140.    This cause of action, Count VI, is brought against Defendant Puryear in his individual capacity.

141.    Upon hearing Matlock report a complaint against him over-the-phone with E911, Puryear cursed Matlock and broke the window of his vehicle with a baton, causing Matlock to drop his phone and fear that Puryear was next going to beat him. *See* also, ¶¶ 41-44.

142.   Puryear continued to curse Matlock, aggressively pulled him from his vehicle, and beat Matlock with no justification.

143.   The proximity in time between Puryear's physicality relative and Matlock's levying of a complaint against him with E911, demonstrates that Puryear's assault of Matlock was retaliatory and or intimidatory, designed to punish Matlock for complaining and scare him so he will not complain in the future. As such, Puryear's beating of Matlock was malicious and orchestrated in bad faith.

144.   Puryear's assault and battery of Matlock caused him to suffer property damage; physical injury; past and ongoing pain, and suffering; more than $30,000.00 in medical bills; past and ongoing emotional distress; disability; and lost income.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Defendants Puryear; (2) award Plaintiff compensatory damages; (3) award Plaintiff punitive damages; and (4) award Plaintiff all other relief deemed proper by the Court.

### G.   COUNT VII: FALSE IMPRISONMENT

145.   This cause of action, Count VII, is brought against Defendant Puryear in his individual capacity.

146.   Upon hearing Matlock report a complaint against him over-the-phone with E911, without legal justification, Puryear cursed Matlock, broke the window of his vehicle with a baton, pulled Matlock from his car aggressively, bound his arms,

threw him to the ground, handcuffed and beat Matlock, and stomped Matlock.

147.   Puryear restrained Matlock in handcuffs between 30 – 60+ minutes to allow Puryear and the others time to illegally search Matlock's vehicle for a reason for Matlock's arrest that he could use as an excuse to justify his mistreatment of Matlock.

148.   Puryear restrained Matlock in handcuffs to deny him the ability to again call E911 and levy a complaint against him.

149.   Puryear restrained Matlock in handcuffs to intimidate Matlock and dissuade him from levying a complaint against him after they left.

150.   Having found nothing illegal during the search of Matlock's vehicle, Puryear continued to falsely imprison Matlock using handcuffs.

151.   Each of the preceding, individually and in their totality, demonstrates that Puryear maliciously and or in bad faith falsely imprisoned Matlock.

152.   Puryear's beating of Matlock caused him to suffer physical injury, past and ongoing pain, and suffering; more than $30,000.00 in medical bills; past and ongoing emotional distress; disability; and lost income.

**WHEREFORE**, Plaintiff respectfully prays this Court: (1) enter a judgment against Defendants Puryear; (2) award Plaintiff compensatory damages; (3) award Plaintiff punitive damages; and (4) award Plaintiff all other relief deemed proper by the Court.

Respectfully submitted,

/s/ Robert J. Camp
Robert J. Camp
Counsel for the Plaintiff

OF COUNSEL:
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

/s/ Robert J. Camp
Robert J. Camp